ETHEL V. COHEN, complainant,

*v.*

HARRY F. COHEN, defendant.

[Decided October 4th, 1937.]

*Mr. Alex R. DeSevo,* for the complainant.

*Mr. Sol F. Feuer* and *Mr. Abraham Natovitz,* for the defendant.

VAN WINKLE, A. M.

The final decree, which includes a provision for the payment of $25 a week to complainant, was entered in this maintenance suit in June, 1936, on a bill which was filed in June, 1929. In June, 1937, defendant filed his petition for a modification so that the amount should be made $15 a week, which amount he has been regularly paying; and his claim is that he is unable to pay more. There are also arrears due under orders for the payment of alimony *pendente lite.* A petition praying that defendant be adjudged in contempt for failure to pay up to the full amount provided in these orders and for failure to pay up to the full amount provided in the final decree had been denied because of the facts shown by affidavits filed, the application being heard on affidavits by

consent, it appearing that defendant was unable to pay $25 a week and that $15 a week was all that he could pay. If defendant had the ability to pay the sums he has not paid it seems that execution would have compelled the payment. See *1 Comp. Stat.* (Chancery act) *pp. 425, 426 § 44; White* v. *White, 94 N. J. Eq. 278; 120 Atl. Rep. 419.* If an execution would have produced nothing more than defendant was regularly paying it should be said that the orders for the payment *pendente lite* and the order for payment in the decree should probably not have been made to the amounts specified, because of the absence of a factual basis.

Oral testimony of the parties and their witnesses was taken on this application for modification; and I must hold that there is now no factual basis for an order for more than $15 a week. Defendant's earnings are virtually the same, it is claimed by complainant's counsel, as they were when the provision presently in force was made, and he contends that the court should not reduce the amount presently provided because of the holding in *Rigney* v. *Rigney, 62 N. J. Eq. 8* (at *p. 13*); *49 Atl. Rep. 460,* which is that an application must exhibit changed circumstances and new facts which have arisen since the order, and that to succeed on such application there must be clear proof of such new facts and circumstances as would justify and require a variation in the amount of alimony allowed. There was testimony that complainant, who is comparatively young and apparently in normal health, is, and has been for sometime employed, and, inferentially, gainfully employed, by a relative in his liquor store. While the testimony on this head was not precise, it was cogent; and I believe from the testimony that complainant has been, from a time after the provision now in force was made, gainfully employed. Complainant denied that she was so employed, but the relative was not produced at the hearing. If complainant is so employed the prerequisite requirement of the holding in *Rigney* v. *Rigney,* is met; and a consideration of all the circumstances leads to the granting of defendant's application to reduce the amount of support to $15 a week.

However, I should not dispose of this application without saying that I do not follow the holding in *Rigney* v. *Rigney*, above herein mentioned, in considering applications for modification of provisions for alimony in divorce suits or for modification of provisions for support in maintenance suits. I say this because on some motion days *Rigney* v. *Rigney* is cited by counsel, oftener than once, on applications for modification.

*Rigney* v. *Rigney*, a divorce suit, was decided in 1901, and the application for modification in that suit was considered in connection with the provisions of the Divorce act then in force. The present Divorce act has a provision respecting orders for alimony in divorce suits which was not in the act in 1901, that is to say, "orders so made may be revised or altered by the court from time to time as circumstances may require." *Rev. of 1907; 2 Comp. Stat. 1910 p. 2035 § 25,* amended *P. L. 1933 ch. 145 p. 296; N. J. Stat. Annual 1933 § 62-25.* The comparable provision in the present Divorce act relating to maintenance suits gives the court the authority, and, I think, imposes on the court a duty, "from time to time to make such further orders as shall be just and equitable" (section 26).

The holding in *Rigney* v. *Rigney* does not now apply to applications for modification under the present Divorce act. The restriction imposed by its holding is not found in the present act with relation to applications for modification in divorce suits or in maintenance suits, and the court should not impose any such restriction on itself. A thing which in equity ought to be done because of the facts, and which may be done under the statutes of the state, should be done, of course. The holding in *Rigney* v. *Rigney* was induced by the facts of that case, which were severely against a contumacious husband. I perceive no reason for adopting the holding in *Rigney* v. *Rigney* on applications for modification in divorce suits or in maintenance suits, simply on the basis of its being a good holding. An application for modication should be decided in accordance with the very right of the matter at the time it is before the court for disposition. This

is no more than saying that such an application should be decided in accordance with equity and good conscience.

This holding in *Rigney* v. *Rigney* was cited by counsel in *Williams* v. *Williams, 12 N. J. Mis. R. 641; 174 Atl. Rep 423,* where Advisory Master Campbell was considering an application for modification, and I note that he decided the application in accordance with equity and good conscience.

In considering an application for modification this court should be as responsive as possible, and it should not hamper itself with a restriction which is not imposed by the Divorce act and which is not necessarily equitable. If there should be a preliminary inquiry to ascertain if there are "changed circumstances and new facts," then if equity is to be done it would also be proper to inquire whether the order sought to be modified had been based on facts or only on assumed facts. Apparently Advisory Master Campbell had this thought in mind when he remarked, in deciding *Williams* v. *Williams, supra,* that no one had appeared for the defendant at the time the order sought to be modified had been made, and that the defendant had not submitted himself to examination before the vice-chancellor who made the decree.

The "propriety" of a decree of divorce or for maintenance is not called in question by an application for modification of the order for payment which happens to be contained in the decree. The decree itself as a decree on a cause of action, for divorce or for maintenance, as the case may be, remains undisturbed. So far as a decree of divorce is concerned the order for alimony in it is only an "incident" of the judgment, as Bishop has said.

To apply the holding in *Rigney* v. *Rigney* to applications for modification means that the court needs to examine the testimony on which the order sought to be modified was made, that the court may be satisfied with respect to "changed circumstances." In most cases such testimony is not available. Often the testimony was given in the course of a final hearing, and it has not been preserved. More than once I have been detained, while I sought, without success, to ascertain the basis of an order for payment made some years before.

The decree in a maintenance suit usually contains a provision, which, however, is not found in the decree in this Cohen case, to the effect that either party—sometimes only the complainant is mentioned—may apply, upon a future change of circumstances for a modification concerning the support of the complainant, as may be just and equitable. I surmise that this provision in the form of decrees in maintenance suits came from a notion that the holding in *Rigney* v. *Rigney* applied to maintenance suits. Such a provision in a decree does not restrict the parties nor the court, for it is the statute, and not the decree, which governs applications for modification. As Vice-Chancellor Bigelow pointed out: "The court cannot divest itself of the authority and the duty to make further orders touching the support of the wife as may be just and equitable." *Baumgarten* v. *Baumgarten, 107 N. J. Eq. 274; 151 Atl. Rep. 606.*

An order, for instance, may be made directing a man to pay a specified sum each week, although the man is unemployed or only partially employed, his potential earning power being considered and counted upon. A year passes, and the man's potential earning power, without his fault, has not produced any money, and he has been put in debt by the order. An application is made for a modification. What then? I suppose it may be said that there has been a change in the circumstances of the parties just because the man has been put in debt by the order; but why indulge in subleties? Are the circumstances of the parties the same at the end of the year, under the holding in *Rigney* v. *Rigney?* Why should the court enter upon such an inquiry? Obviously, the equitable thing to do is to settle a new order, and it may be, later on, another order, that both parties may have the full benefit of the circumstances existing at the time the court makes an order, and this without reference, necessarily, to the facts or reasons on which a previous order was made, and with no restriction on the court growing out of a previous order, so far as its continuance is concerned.

·No order for support should continue in force for its full amount where it is clear that the man cannot pay to the full

amount. Unpaid sums accrued under an order which happens to be in a decree of divorce are vested in the wife and may not be discharged merely by an unconsented-to-order of the court. And, in my view, past due alimony accrued under an order for alimony to be paid *pendente lite* in a divorce suit is vested in the wife just as past-due alimony under an order for alimony which happens to be included in a decree of divorce is vested. I have found that a wife will accept less than full payments under an order for the payment of alimony *pendente lite* for a long period where the husband is regularly paying what he can pay, seemingly not at all caring to get, and perhaps not desiring, a final decree, and then, suddenly, application is made to have the husband adjudged to be in contempt. Orders that are reasonably certain to be futile, or not availing to their full extent, should not be made, but many such orders have been made through the years, both *pendente lite* and in decrees, and some of such orders are still in force. Futile orders should not be continued, no matter what the circumstances of the parties were when the orders were made.

My chief concern is that this court shall do equity; and in what I have said I have had in mind, of course, only meritorious applications. Applications for modification, whether for increase or decrease, which are without merit will be discouraged, and I should add that they will turn out to be troublesome activities for applicants.

° The sums due and accrued under the present order in the decree and under the orders for alimony *pendente lite* may not be discharged; but an order may be entered reducing the weekly payment to $15 from this time forward.